### HENRY v. CRAIGIE & CO., Limited.

#### (Circuit Court of Appeals, Third Circuit. June 4, 1921.)

#### No. 2690.

Brokers ☞43 (3)—Contract held not to entitle brokers to a commission from the seller of merchandise.

Where defendant wrote to plaintiff's brokers concerning a powder, "We make you a price of six (6) cents per pound, net without commission," and later, on receiving a letter from plaintiff apprising them he had a buyer, and containing seller's contract, defendant returned the letter, marked "Accepted," the letter reading, "It is understood that you are to protect us for the difference as between your price of 6 cents per pound net and the final selling price which our buyers are paying for the material. You will understand that we will have to divide the above overage with two other brokers," plaintiffs had no claim for commission.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action by Craigie & Co., Limited, against Leon Henry. Judgment for plaintiff, and defendant brings error. Reversed.

Frederick K. Hopkins, of Hoboken, N. J., and Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Thomas G. Haight and John A. Hartpence, both of Jersey City, N. J., of counsel), for plaintiff in error.

Moses J. De Witt, of Newark, N. J. (Millard F. Tompkins, of New York City, of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Craigie & Co., on the ground of diversity of citizenship, brought suit against Leon Henry to recover some $13,000 for commissions for procuring a purchaser for 150 tons of cocoa compound. The case was sent to a jury, and at the conclusion of the proofs the court denied defendant's request for binding instructions in its favor. The jury having found for plaintiff, and a judgment being entered thereon in its favor, this writ of error was sued out by defendant. The underlying question involved is whether the trial judge should have held that, by the papers which evidenced the contract between the parties, the plaintiff was not en-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

titled to commissions, and therefore granted the defendant's request for binding instructions.

The proofs in the case tended to show that on June 18, 1919, Henry, hereinafter called the defendant, wrote Craigie & Co., hereafter styled plaintiff, as follows:

"Confirming our telephone conversation of this a. m., beg to say that the sample of powder handed to you is made of cocoa shells and hulls finely ground. We never had any analysis made of that powder, but believe that the crude fiber must run up to about 17 per cent. and the fat between 5 to 8 per cent. We can turn out about 50 tons of this product per month, and make you a price of six (6) cents per pound, net without commission, goods packed in cases f. a. s. New York, cash against documents."

In pursuance of this authorization, plaintiff procured a buyer, and on June 26 wrote defendant a letter, accompanied by the seller's contract. This letter the defendant received and marked "Accepted," and it was returned by him the same day. It reads:

"We hereby confirm sale made to-day for your account to Messrs. J. A. Kirsch & Co., of this city, of 150 tons of cocoa compound as per sample submitted, packed in cases f. a. s. New York, to be delivered by August 31, 1919, or sooner, as per contract inclosed. It is understood that you are to protect us for the difference as between your price of 6 cents per pound net and the final selling price which our buyers are paying for the material. You will understand that we will have to divide the above overage with two other brokers. Kindly sign duplicate copy of this letter and oblige.

"Accepted 6/26/19.                                    C. Leon Henry."

Under date of June 27th, the plaintiff wrote defendant in reference to the seller's contract, as follows:

"I am inclosing original seller's contract for 150 tons cocoa compound, sold for your account yesterday to J. A. Hirsch & Co., of this city. We are very glad to have been able to negotiate the second contract for your account, and trust that we may be as successful in the future. I want you to understand that we had to divide the overage with two other concerns, who were between ourselves and J. A. Kirsch & Co. I hope that on the next contract for you we can sell direct to the buyer, and save both you and ourselves the major part of the profit."

These papers constitute the contemporaneous writings, and, taken together, they evidence the whole transaction. Considered as a whole, we are clear the rulings not only fail to show a situation where an agreement to pay commissions could be implied, but they expressly show that the understanding and agreement of both parties was that no commissions were to be paid. This is clear from a study of the papers. Thus, in his letter of June 18th to Craigie, a letter which is the foundation of the whole matter, and whose terms are not modified or changed by any subsequent writing, Henry says he can "make a price of six (6) cents per pound, net without commission," etc.

After obtaining a buyer pursuant to such understanding, viz. "net without commission," and transmitting to Henry for approval and acceptance the seller's contract, Craigie, the plaintiff, not only made no mention of commissions, but, in confirmation of the fact that the sale was to be "net without commission," expressly stated and claimed the source from which he was to obtain his pay, using these words:

"It is understood that you are to protect us for the difference as between your price of 6 cents per pound net and the final selling price which our buyers are paying for the material. You will understand that we will have to divide the above overage with two other brokers."

From this definition of overage as the difference between 6 cents Henry was to have, and 10 cents, "the final selling price which our buyers are paying for the material," and insisting on protection from that source by Henry it will be seen that no ground existed for a claim of commission. Indeed, the papers show that this was in the nature of a joint venture, where both parties were to participate in an expected resultant profit namely, Henry to the extent, to use the terms of his letter, of "your price of 6 cents per pound net," and Craigie in the terms of their letter the excess over "a price of six (6) cents per pound, net without commission." And this participating in the result of a joint venture as a profit is evidenced by Craigie's letter of June 27th to Henry. He speaks of his overage, creating the profit, in these words, as quoted above:

"I hope that on the next contract for you we can sell direct to the buyer, and save both you and ourselves the major part of the profit."

Indeed, upon the writings as a whole—and, as we have said, they evidence the dealings between the parties—we are clear that the singularly large prospective overage of the joint venture, and not the relatively small customary commission of a broker, was the profit to which Craigie was looking, and that the trial judge should have affirmed the defendant's point for binding instructions. By doing otherwise, the court failed to enforce the written contract the parties had made for overage, and permitted the jury to enforce a supposed contract for commissions, which the parties had not only never made, but expressly stipulated was not made.

The judgment below is reversed, and the cause remanded for further proceedings.